Good morning, Your Honors. May it please the Court, and I'd like to also reserve a couple moments, three minutes for rebuttal, please. Three minutes, you say? That's fine. Thank you. Thank you, here. I represent Nina Shapiro from Lancaster, representing Mary Burton, plaintiff and appellant, sitting beside me here, too, Your Honors. We're here today, and actually, I have two issues. I have the issues on appeal, and there is also a pending motion to supplement the record that was sent to the merits panel, but we have yet to have had an answer on that, so I'm imagining I'm going to be addressing both of those herein. And they're both interrelated. This stems from, and it's an employment with related contract and torts actions. It comes down to one question, whether older female Mary Burton resigned voluntarily or she was terminated, slashed, involuntarily. It would seem that, speaking only for myself, that your best argument relates to the contractual claim that you made. Because, and I'll telegraph what I'm going to say to your opposing counsel, I don't see anything in the record that's definitive as to Ms. Burton actually resigning. But the question I have is, you've got an extremely capable person who started one, two companies, sells the company. And as often happens, there is a culture clash, if you will, in terms of how one party does it versus another. And I don't see the evidence here of age or gender discrimination. Well, Your Honor, the Judge Ludwig, who did issue his opinion well after the time that we could address any of his misrepresentations of the fact for the record, which, of course, I'll address that, too, with his Rule 59e violation here, a motion for reconsideration here. And that he himself found, though, that there was a prima facie case of age and assumedly gender. She is 67 years at that time. There was an ageist comment, meant you should retire. That doesn't sound real ageist. She also was replaced by a significantly younger, 43-year-old male who she was told to train, who had actually assumed her duties. They had been removed from her prior to the even fateful discussion. The 43-year-old person, he didn't assume all of Ms. Burton's activities, did he? I would debate that he did at the time. He assumed her supervisory duties over the sales force that she had been serving and supervising for years, which was the same sales force that stayed in place upon the acquisition of the business. So that's David Farris, right? I'm sorry? That's David Farris, correct. That's David Farris, right? So why don't you focus on that? Because that seems to really be at the crux of the matter because obviously your adversary says, you know, lots of responsibilities split among many people. How can there be any reasonable inference of either age or gender discrimination? You know, I think there are some issues with regard to the genuine issues with regard to the prior and finished case, but we can get to that. If you focus on this, I think that would be helpful. He assumed the supervision of her sales team and was told to attach himself to Mary, to learn, and I'm using her because that's what they said, attach herself to her, learn everything she has. That sounds like good advice. She was a success. Especially if you're going to assume their total duties. If you're going to learn everything that they know and you're going to be doing their job, it's excellent advice. And he assumed then not only the supervision but all of her coding and everything that she was doing. So is it your position that even if certain of the other duties were spread out, that the core duties that she did were assumed by him? Is that what you're saying? I would say that actually he assumed her duties, her supervisory and her leadership duties. Yes, they can say here, well, we gave, you know, one of her subordinates some more duties. I mean, that doesn't take the essence of her duties. That to me is just a means to try to avoid then the accusation that it was blatant age discrimination of assuming all of her duties by a significantly younger male. And that argument I believe the judge didn't even touch on. The judge, what he did very conveniently was just to say that she resigned. And I appreciate that the court sees that there's a question whether she resigned or not, because there absolutely is a question of that here. If the judge's gender and age claim determinations were based on the judge's conclusion that she resigned as a matter of fact, then are you saying that those determinations on age and gender can't stand regardless of these other issues that we're talking about? Well, I think the age and I believe what the judge did is try to conveniently and easily put everything in a little box just saying, well, if she voluntarily resigned, it doesn't matter whether her job was somebody younger because she voluntarily gave it up, advocated it to someone younger. And that's not the case. She never resigned. She never retired, although asked to do so here. She was involuntarily separated. And that not only was age and gender discrimination, but it was a blatant breach of the contract for which both parties, the company and the plaintiff, had intended to be binding obligations. You've got some bad facts here. I mean, why was there no contact? Why didn't she say immediately, I didn't resign, I don't know what you're talking about? She didn't know that, well, she walked away that day because she was disgusted and walked away, went back to her job. He didn't say that day you have resigned. He says, why don't you? She didn't know. He says, why don't you consider it? Yes. And she went back. She was so disgusted. She went there trying to engage in discussion because he was an absent supervisor. He would purposely exclude her from business communication. You're not answering my question. But then she leaves, and you say she went on a scheduled vacation. No, before that, she went back to work. She went back to work. She actually was training Mr. Farris. After that, she was informed. Okay, let's get to my question. She's informed that the company believes she has resigned. That's right. And at that point, her attorney did. And that was the basis of the initial agreement that was made, the employment agreement, that any notices of cessation of the contract would be given to counsel. And her attorney acted on her behalf. There was some period of delay, was there not? No, none. Zippo. The very same day, on the 16th of June, when the letter was sent to her, I believe delivered either that day or the day after by certified mail, it was sent also by, I believe, fax to her attorney. But she had called into the office before that letter and was told by people in the office that everyone thought she had resigned. No, she wasn't told that. She was the only one putting through her phone calls. And she was on vacation, came back to the letter. She was not. To me, one, I believe that they had already made the decision because Mr. Fulton, Jack Fulton testified that he went straight from that conference in New York to Wisconsin on June 9th, which I believe was a Monday, and he was already preparing a letter to the customers. The letter to the customers conveniently and significantly was the exact same date that the letter to Mary Burton were allegedly accepting your resignation. So it doesn't even matter anyway. And then her counsel immediately stepped in, questioned to corporate counsel Mr. Layden, what is going on, where's your evidence of resignation versus termination, and he blew him off. And that's significant why, if in fact, I mean, the judge put undue emphasis on the fact that she, after the 16th, went through her attorney, which any client would have expected their legal representative to act on their behalf, if the judge had issued a timely opinion. Actually, what usually happens is you immediately respond, hey, I didn't resign. You're going to hear from my attorney. I mean, if it's as blatant as you say, I mean, most people would immediately say, that's just, that's completely untrue. And she said that to her attorney, and her attorney opted for it, and specifically. That's why it's so significant, the attorney's affidavit. What was the date of the first attorney letter to the company, Telex? Let me look it here. Was it how soon after the 16th, was it? I have a correspondent that I have. I noticed there was phone contact, and there was one here. This is June 26th. If that's the first letter, it's a bit long. It wasn't letters. There was phone contact that was going back and forth. But why wouldn't he say, you know, put it on the record? But the contract in and of itself required written resignation. And there was no written resignation. That's of her. The question then becomes, did in some way they terminate her? And as I said, you'll hear me talk with your opposing counsel about that. But in this case, it would seem that if it is true that you found out for the first time on the 16th, when the notice went out that she's left the company and you say that's not true, you would think also beforehand when you called in and your calls weren't being forwarded that you would know that there are warning signals, right? I'm sorry. If a call into the company before the 16th, between the whatever it was, the date of the convention, the 3rd, 4th, 5th, 6th, whatever, and the 16th, and as you say the calls were not forwarded, what did they say when she called in? They told her they weren't putting the phone call through, but they had a problem with receptionists also. They had no regular receptionists, and she didn't take it. I mean, it wasn't enough to put our notice one way or the other. Her son had been negotiating to leave, and he is not at issue. But it is a stark contrast that he placed in writing and that he admittedly, yes, he wanted out voluntarily. Yes, because of that culture clash that you've talked about. But she did not, and it was known all along. There were conversations, and there's an email in here, that when there was discussions in early May with her son, Ed Burton, about him leaving, they said, what about Mary? And Mary's not leaving. Tell Mary to play ball, whatever that necessarily means. But he made it very well known. She wasn't going anywhere. Let's hear from Mr. Freiman. We'll get you back on record. May it please the Court, David Freiman, Ballard Spahr, for all of the defendants below appellees here. Before you start, there's one thing in your brief that troubled me. You cited the Wiley v. Marley case from the Tenth Circuit for support for your estoppel defense to Ms. Burton's breach of contract claim. And you say that the trial judge's ruling that the plaintiff was, quote, a stop from asserting that a resignation was required to be in writing to be effective.  That's a quote. But you failed to acknowledge that the Tenth Circuit later reversed that very ruling. I believe what we said was that they cited the trial court making that finding. No, they concluded that, quote, there was a jury issue on the question of resignation having been made earlier by the plaintiff, close quote. I mean, you've got to be careful. The case could have helped you, perhaps, but it turns out not only does it not help you, it's contrary to what you say. My apologies, Your Honor. I'd like to focus attention on the contract claim because, of course, Judge Ludwig did not spend a great deal of time on that claim and we weren't quite as crisp as we could have been in our brief. I mean, the bottom line here is that if she did not resign, she gets benefits and certain perks that otherwise she would not get. Is that correct? That's correct. And where is it that there is any indication in the record that she actually, you don't have a letter from her, and she's asked a couple times at a convention, should I resign? And they say, no, no, we want you. Then finally the third time, well, maybe you ought to consider it. That's not a resignation. So where is the evidence of a resignation by Ms. Burton? Your Honor, I would submit that that's really not the right question because on the contract claim, the focus isn't on whether she resigned or not. It should be on Teleflex's actions. In other words, what action did it take? We can do Teleflex's actions, too. Did Teleflex terminate her? I submit, no, it did not. The only action it took to discontinue her employment all the way up to June 16th, I think we can all agree, it did not take any action to terminate her employment. The first action that the plaintiff points to is this letter on June 16th, 2008. The first formal notification. What about the fact that when she tries to call into the office and do work, she's told that she calls through and that she's not allowed to participate in anything at the work site? Two points on that. First, Your Honors, the record evidence, her deposition testimony, was that she didn't call anybody. She didn't do anything. She didn't make any attempts. This is evidence you put forward. You said this is what happened. That's how we know she knew. All of us read this in the record, so I don't think we're all wrong on this. No, she submitted an affidavit as part of briefing, I believe is how that came about. But the fact that she calls in after she's told everybody she's resigned, all that proves is that she's calling in and maybe she's trying to transition some things. It doesn't transform Teleflex actions into a termination. All it ever did was say to her, based on what we submit is absolutely a reasonable belief, based on her actions. What is the action she took that told you she resigned? The absolute best that you have for us. The best that I have is that she doesn't return to work and that she tells all these people that she's resigning, and based on that reasonable interpretation of events, all Teleflex does is send a letter saying we accept your resignation, not that we're terminating your employment. And then subsequently to that. You said she didn't. Do you dispute that there was a previously scheduled vacation? No, I mean, that's something that we can't dispute. Even if we were to say that we disputed that, that would be an issue of fact, where if she says, no, I did, I think that's an issue of fact. So she goes on vacation. We have to assume the facts in a light most favorable to the non-movement. So she goes on vacation. So not returning to work falls away. That's not a meaningful fact. And you said she tells everybody. Did she tell anyone in the chain of authority above her? Do you have any evidence that she told anyone who she would have to report to that she was resigning? She does not tell her direct supervisor, but she tells people who tell the direct supervisor. So she used to own the company. What's that? She used to own the company. Do you think telling her direct supervisor might be the person that we should focus on if we're going to impute this statement of resignation to her? But the issue is whether TELEFLEX, I submit, Judge Greenaway, that TELEFLEX didn't take any action to terminate. The only action it took was to tell her, we think you've resigned, and we're accepting that. And she never did anything to – And she gets a lawyer, and you start the dialogue. And that lawyer never makes any protest. And the record evidence is that she calls her lawyer. So you're arguing waiver now? They didn't say anything, so they waived their rights? She did not do anything to induce TELEFLEX to terminate her employment. The only thing she did was she got this letter, which didn't tell her we're terminating your employment, which told her we believe you've resigned and we're accepting that, which I maintain based on the record was certainly a reasonable interpretation of events. If word got up to her supervisor that she was telling others, third parties, that she resigned, wouldn't you think that this person would either call or write and say, we understand that you say you have resigned. Is that true? That wasn't done here, was it? It wasn't done in the record. Evidence was that they had incredible difficulty getting a hold of her. Isn't that the logical thing to do? I think the logical thing would be for her to say, what are you talking about? I didn't resign. It's fine if you don't want me back here, but I'm not resigning. You have the right. You want to terminate my employment, terminate my employment. The day you sent the letter, you also sent a letter to all the customers saying she's out of the company and you'll no longer have contact with her, right? Same day. That she's left the company to pursue other opportunities, correct. The magic words, which means it wasn't amicable. But certainly not anything that I think is at all capable of debouncing. Isn't this really a question of fact that we should be sending back? Amen. I maintain it's not, Judge, because it is a situation where the only action that Teleflex took was to send a letter saying we accept your resignation. Well, no, I mean, Judge O'Malley said you took another action. We don't make findings of fact. Juries do, and this is one that is the paradigm for what should be decided by a jury and not by a judge at summary judgment. I mean, I think he made the comment that when she said on deposition that she hadn't resigned, it was self-serving. What else was she supposed to say? Well, I believe the self-serving related to the fact that she submitted an affidavit as part of summary judgment briefing that contradicted her deposition testimony, because her deposition testimony was I never went back to work at all. I didn't email anybody. I didn't call anybody. All I did was call my lawyer. And her affidavit then supplements that by saying I did not resign. And so, I mean, if she had said in the affidavit, you know, I just might have resigned, I mean, she wasn't going to say that. But, Judge, again, the fact that we may have been mistaken about her resigning doesn't convert what the action was, which was simply telling her that we accept your resignation. But to accept, you need an offer. And she had offered at one point the answer is no. She had offered the second time, possibly, the answer was no. Then the third time, she's getting ready to leave and says, well, maybe you want to consider it. That's not offering acceptance. I mean, that's just classic contract. But then all of her actions and her words lead to this reasonable interpretation. They lead to a jury needing to decide whether she had actually made an offer to resign that the company accepted. We maintain that the Teleflex Act didn't take any act to terminate without cause. Well, you simultaneously send a letter accepting her resignation and then making it impossible for her to come back by telling everyone that she would be working with that there's been a not-so-pleasant change of circumstance. We may have made it impossible. It may have been that that was the practical implication. But until she says, I protest this, that's not what happened here. And they say, we're barring the door, we're not letting you back in here. But that's all in one day. I mean, if the letter goes out the 16th, she gets it either the 16th or the 17th, and the letter to customers goes out at the same time, when are we supposed to get the – Let's say she did protest. Let's say she did protest and she said on the 17th or 18th, you know, I didn't resign. That letter has gone and hit the desk of all the customers. So she's effectively gone anyway. Well, I think it's an issue, Judge, that – That should be resolved by a jury. No, I think that it's an issue. It's a money issue. Because if they don't want her there, then they have the right – then they've effectively taken action to terminate without cause. It's simply a notice and benefits issue, and whether their actions can be interpreted one way or the other. The fact that she may not be able to come back really isn't the contract. They may have had the right to terminate her, but if they did they had to give her certain benefits, and they didn't do that. Right, but in order for her to be entitled to that, she's got to establish that they took this action to terminate without cause. And we maintain, Judge, that they didn't take that action, that the only action that they took was to, based on their reasonable interpretation of events, conclude that she had to resign. And without her making any protests, without her lawyer making any protests, even if you want to let in these e-mails that he wrote, all he says is, it might be helpful to know something about this. I have an initial concern, but nobody says, wait a minute, I didn't resign. I'm ready and willing and able to come back here. If you don't want to let me come back here, then you're going to have to terminate my employment. She did not do anything to protest or to the extent Teleflex misunderstood her actions or her words to correct that. Do you think that if a jury heard the fact that you had sent letters to customers with regard to her departure for other opportunities, that might be a fact that would influence a jury on the question of whether she was terminated or resigned? I don't believe that's any different, Your Honor, than sending her a letter accepting her resignation. It sends that letter because it reasonably believes that she's resigned, both the June 16th letter and the letter to customers. Let's turn for just a moment to the good faith and fair dealing. Record evidence indicates that Teleflex did in fact wish to, in effect, divest itself of Ms. Burton and possibly her son. Things weren't working out. Why shouldn't we conclude that Teleflex leapt to the conclusion that Ms. Burton resigned based on its desire to get rid of her previous leadership to, in effect, divorce itself from her? Isn't that possibly an indication of a breach of covenant of good faith and fair dealing? Well, I believe that the claim here, Judge, is that they induced her into this contract knowing that they were going to terminate her. And I don't believe there's any evidence of that, that there was this false promise of continued employment. And clearly this was one of these transactions. We're buying a family business. We're a big public company. The deal is that we're going to guarantee you a minimum of two years of employment, and this is what we're going to do for you, and these are the benefits and the salary for two years. And everybody was clear and everybody was represented by counsel that that was the deal. That's the one thing that's difficult to parse. You characterize the claim as one that it's lack of good faith and fair dealing as it relates to the renewal of the two-year time frame and to basically indefinite employment. But I think that your opponent characterizes the good faith and fair dealing claim as broader than that and including that there was no intention to ever complete the two-year period and that there was not good faith and fair dealing in connection with the issue of the termination versus resignation. Well, Judge, I don't see that as anything, as Judge Ludwig found, I believe, anything different than the contract claim. And I think based on the events, given her conduct of walking away, of telling these people that she resigned and simply sending a letter, we accept your resignation, how that can be interpreted as any type of bad faith type of action. Thank you very much. Thank you, Judge. Ms. Shapiro. Your Honor, I only want to add a couple more points. In the appendix at 433 is a change of status form. Once again, it's on June 17th, and it says, drop from payroll, Mary Burton, Department of Administration. There is absolutely a designated space for retired. It's not completed. There's a space for resign. That would be part of the presentation you would make to a jury if you get a remand. Correct. Correct. But that goes in accordance more with the letter that was already sent out to the – I'm sorry. Where does it say that? Are you looking on the appendix at 433? Yes. And the bottom says drop from payroll, and then it says – That's what I'm looking for. Yeah. Oh, it's right in the bottom. You mean other, where it says other? Other is what they checked off. They didn't check off resign, which is their argument that she resigned, or retired, which is their argument. They put other. Left company to pursue other opportunities, which is their words, not hers, the exact same words that were mirrored on the letter that was sent the same day to all the customers. Okay. Thank you, Your Honors. Thank you very much. Thank you to both counsel. We'll take the matter under advisement.  Thank you. Oh, there it is. Ready? Thank you. Thank you. You're welcome. Have a good day. Thanks a lot. Thank you.